# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br>Shawn ROWLANDS<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 6:25-mj-00058-HBK<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 28th, 2025__ in the county of __Mariposa__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 36 CFR 2.35(c) | Presence in a park area when under the influence of alcohol to a degree that may endanger oneself or other person, or damage park property or resources. |

This criminal complaint is based on these facts:

See affidavit attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

*Complainant's signature*

Krista Poferl
*Printed name and title*

Sworn to me in accordance with Fed.R.Crim.P. 4.1.

Date: December, 28, 2025

*Judge's signature*

Helena M. Barch-Kuchta US Magistrate Judge
*Printed name and title*

City and state: Yosemite, Ca

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

### BACKGROUND OF AFFIANT

1. I, Krista Marie Poferl, further state, I am a Law Enforcement Officer ("Officer"), employed by the National Park Service. I have three years of experience as a Law Enforcement Officer in the National Park Service and have worked in the Yosemite National Park for two years. I received a Cum Laude Bachelor's Degree of Science in Criminal Justice from Arizona State University and attended a Law Enforcement Seasonal Academy in 2019. I was trained to identify the signs and symptoms of intoxication as part of standardized field sobriety testing based on the National Highway Traffic Safety Administration training. I was also trained to conduct investigations of crimes that have involved excessive use of alcohol and making arrests based on probable cause at the Federal Law Enforcement Training Center in Brunswick, Georgia where I graduated with honors in 2024.

2. The facts of this criminal complaint are based on my personal observations, on my training and experience, as well as my consultation with other LEOs. This affidavit is intended to show merely that there is sufficient probable cause for the criminal complaint and does not set forth all my knowledge about this matter.

### JURISDICTION

3. The facts set forth in this criminal complaint occurred on December 28th, 2025, within the geographic boundaries of Yosemite National Park, California. Yosemite National Park is an area of federally owned public land administered by the NPS. Yosemite National Park is an area of the special maritime and territorial jurisdiction of the United States as defined by

PAGE 1 OF 7

Title 18 U.S.C. § 7 (3): "Special maritime and territorial jurisdiction of the United States defined" and by Title 16 U.S.C. § 57: "Yosemite and Sequoia National Parks; exclusive jurisdiction of United States."

4. Yosemite National Park is located within Mariposa, Madera, Mono and Tuolumne Counties, all of which are located within the Eastern District of California.

## CHARGES

5. Based upon the facts set forth in this criminal complaint, I believe probable cause existed to believe that Shawn Rowlands ("ROWLANDS"), violated the following laws of the United States on December 28th, 2025, within Yosemite National Park:

   a. *36 CFR § 2.35(c) – Presence in a park area when under the influence of alcohol to a degree that may endanger oneself or another person, or damage property or park resources.*

## PROBABLE CAUSE

6. On December 28th, 2025, at about 2103 hours, I, Officer Poferl, was on a routine foot patrol at the Curry Pavilion food court that contains the 1899 bar and restaurant. I took a report from 1899 bartenders of a man who had left but made a woman feel uncomfortable. They described him as a tall white male with a hat, blue sweatshirt, jeans, salt and pepper beard with an accent in his approximate 50s. The employees stated they had walked him out of the establishment. I later found this man and identified him as Shawn ROWLANDS of Victoria, Australia by his Australian Driver's License.

7. As I stepped outside of the pavilion, I found a male matching the description given by the employees. While I waited for someone inside the pavilion to open the door for me to confirm the man was whom the employees were describing, I saw the man was folded

PAGE 2 OF 7

forward with his chest almost touching his thighs, he had a lit cigarette in his right hand, and he snored briefly before waking up and sitting more upright. The bartenders confirmed it was the same man who had been inside.

8. I stepped into the shadows to observe ROWLANDS for a few moments. I could see that although he had appeared to have woken up ROWLANDS was not moving and I moved in to contact him to check on his well-being.

9. I approached ROWLANDS and identified myself. ROWLANDS stood up from his bench that was to the left of the entrance doors, stumbled to the right of the walkway, and fell over backwards over a rope that was approximately knee high. I asked ROWLANDS if he was alright, he said: "Nah. I'm probably not alright."

10. ROWLANDS said this while attempting to stand up on his own. I aided ROWLANDS into standing up and sitting down on the bench to the right of the door. I had to stop ROWLANDS from falling on his face after standing up. While helping him stand up I could smell a heavy odor of alcoholic beverages emanating from his person.

11. I first asked ROWLANDS for his ID at 2113 hours. I then began asking him other questions while he was retrieving it. After one minute, ROWLANDS asked what I wanted. He then stated: "there must be something in here" and lifted his wallet towards me. It took another minute and ROWLANDS asking two more times what I wanted to produce his Australian driver's license. During these two minutes ROWLANDS pulled out a couple of other bank cards of some sort. When a person has consumed an excessive amount of alcohol, they often exhibit an effect on their cognitive ability to process or respond to multiple tasks or stimuli at once.

PAGE 3 OF 7

12. During the two minutes of looking for his identification, I asked ROWLANDS how much he had to drink, to which he replied: "Uh, too many obviously." I attempted to ask how many that was for him, ROWLANDS just said "a lot."

13. I made small talk with ROWLANDS while I gave his name and date of birth to Yosemite Dispatch and waited for Ranger Cody Hays to arrive on scene. ROWLANDS speech was slow and slurred. Slurred speech is another symptom of excessive use of alcohol. Ranger Hays arrived on scene and went to speak to the woman who was inside that had interacted with ROWLANDS.

14. I noticed he had glassy eyes and kept repeating phrases; while speaking with ROWLANDS, ROWLANDS told me his last meal was around noon which consisted of a salad and that he was staying alone in the park. One phrase ROWLANDS kept repeating was that America is a "fascinating" place. ROWLANDS repeated this phrase 6 times in five minutes. Repeating questions and phrases are a common symptom of excessive alcohol consumption.

15. Ranger Hays returned and briefed me that woman stated they had been drinking at the bar for approximately four to five hours.

16. Ranger Hays and I attempted to have ROWLANDS lead us back to his cabin to show that he could make it back safely. At the first suggestion, ROWLANDS could not locate his map. A map that he had previously taken out of his front sweatshirt pocket and placed back in his sweatshirt pocket. ROWLANDS determined a direction to head in and stood up from the bench and began stumbling towards me almost falling over, but I caught him from falling over.

17. ROWLANDS led the way up onto the "Pizza Deck" as it is commonly referred to and appeared to be confused how to navigate around the stations and rope that help form the line for Curry Pizza.

18. ROWLANDS eventually picked a route and got to the stairs. ROWLANDS almost fell down the stairs but caught himself and was able to get down them without incident. At the bottom of the stairs ROWLANDS looked around confused on which way to go next and staggered backwards. ROWLANDS did not fall. ROWLANDS was confused on which way to go, I suggested he look at his map. ROWLANDS tried three pockets before finding it in his sweatshirt pocket, where he had placed it, just two minutes before.

19. ROWLANDS moved to sit down at a picnic table and tilted off balance and began to fall. Ranger Hays and I had to grab onto ROWLANDS to keep him from falling over. Lack of coordination and balance is another common symptom of excessive alcohol consumption.

20. As ROWLANDS finally sat down, he said: "I'm really embarrassed" for the second time in two minutes. Ranger Hays asked ROWLANDS how much he had to drink and ROWLANDS again said a lot. Ranger Hays asked him to put a number on it and ROWLANDS said: "15, 20" and that he had started drinking at "3 o'clock."

21. I then asked ROWLANDS if he normally has 15 to 20 drinks to which he replied: "no, I can't." ROWLANDS was holding his map out towards me at this point and asked if I could see where he was going. Getting the mapped turned so ROWLANDS could read it took three separate prompts "to turn it so he can see/read it." Ranger Hays was getting his Preliminary Breath Test from his patrol vehicle at this point.

22. I showed ROWLANDS where we were on the map and where his cabin is on the map and asked if he could trace me a route to get to his cabin. ROWLANDS was unable to do so until I directed him to one of two routes.

23. I then explained to ROWLANDS that the concern was he was a danger to himself. The conversation went as follows:

24. Me: "Mr. ROWLANDS I'm gonna be frank with you." ROWLANDS: "Yeah."
Me: "Uh, part of the concern is that you might be what we call a danger to yourself"
ROWLANDS: "Yeah." Me: "And that you can't get home."
ROWLANDS: "Well. Yeah." Me: "That you're so under the influence of alcohol to the point that you are not safe to get back to your cabin." ROWLANDS: "Yes. That's correct."

25. I asked ROWLANDS again if he agreed that he is a danger to himself, he said yes.

26. At this point I asked ROWLANDS about the interaction with the woman at the bar, and he eventually told me that he was worried about her driving home after drinking and was trying to offer his tent cabin and he would sleep in his camper van.

27. During that interaction, Ranger Hays returned with the Preliminary Breath Test, the result was .206%. The percentage read by a breath test, both Preliminary and Evidentiary, measures of the number of grams of alcohol per 210 liters of breath. The result is given as a decimal percentage, meaning ROWLANDS had at the time approximately .206 grams of alcohol per 210 liters of breath.

28. I placed ROWLANDS under arrest at 2143 hours, and he was transported to Mariposa County Jail by Ranger Hays.

## CONCLUSION

Based on the forgoing facts of this affidavit, I believe probable cause existed for the arrest of Shawn ROWLANDS for being present within a park area under the influence of alcohol to a degree that may endanger oneself or another person, or damage property or park resources within Yosemite National Park on December 28th, 2025.

Respectfully submitted,

_[signature]_

Krista Poferl
United States Park Ranger
National Park Service

December 29th, 2025
Sworn to me in accordance with Fed.R.Crim.P. 4.1:

_[signature]_

The Honorable
Helena M. Barch-Kuchta
United States Magistrate Judge

Approved as to form by:

_[signature]_

Law Enforcement Specialist (Rule 180)
Briana Vollmer